IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARIE CARUSO,                 )
                                     )
          Plaintiff,           )
                                     )
     v.                           )         Civ. Action No. 12-277-GMS-CJB
                                     )
SUPERIOR COURT OF DELAWARE;      )
SUSAN JUDGE, in her individual capacity;   )
ROGER KLING, in his individual capacity;   )
SANDRA AUTMAN, in her individual capacity;   )
and MAUREEN FREDERICK, in her individual   )
capacity,                         )
                                     )
          Defendants.        )

## REPORT AND RECOMMENDATION

In this action filed pursuant to 42 U.S.C. § 1983, Plaintiff Marie Caruso ("Plaintiff")

brought suit against Defendant Superior Court of Delaware ("Superior Court") and Defendants

Susan Judge, in her individual capacity ("Defendant Judge"); Roger Kling, in his individual

capacity ("Defendant Kling"); Sandra Autman, in her individual capacity ("Defendant Autman");

and Maureen Frederick, in her individual capacity ("Defendant Frederick") (collectively,

"Individual Defendants"). (D.I. 3) Presently before the Court is Defendants' Motion to Dismiss

("Motion"). (D.I. 5) For the reasons that follow, I recommend that the Motion be GRANTED-

IN-PART and DENIED-IN-PART.

## I.     BACKGROUND

###      A.     The Parties

Plaintiff is a Delaware resident and former employee of the Superior Court of Delaware.

(D.I. 3 at ¶ 2) The Superior Court is a court organized pursuant to Del. Const. art. VI, § 10.

(*Id.* at ¶ 3) Defendant Judge, at all times relevant to the Amended Complaint, served as the ·

manager of the Judgments Section of the Superior Court's Office of the Prothonotary ("Office of

the Prothonotary" or "Prothonotary Office"). (*Id.* at ¶ 4) Defendant Kling, at all relevant times,

served as Superior Court Personnel Director. (*Id.* at ¶ 5) Defendant Autman, at all relevant

times, served as the Superior Court Deputy Prothonotary. (*Id.* at ¶ 6) Defendant Frederick, at all

relevant times, served as the Superior Court Administrator. (*Id.* at ¶ 7)

### B. Factual Background[1]

Plaintiff was employed by the Superior Court for over thirteen years before the

occurrence of the events leading to the end of her employment in August of 2011. (*Id.* at ¶ 10)

At the time of her separation from the Superior Court, Plaintiff was employed as a Judicial Case

Manager II, working in the Judgments section of the Office of the Prothonotary; in that role,

Plaintiff reported to Defendant Judge. (*Id.* at ¶ 11)

On August 12, 2011, Plaintiff opened and read a piece of inter-office mail that was

directed to Defendant Judge. (*Id.* at ¶ 14; D.I. 6, ex. A at 1) Plaintiff also shared the contents of

that document with one of her colleagues. (D.I. 3 at ¶ 14; D.I. 6, ex. A at 1) Plaintiff had the

authority to open and read all mail that was received by the Office of the Prothonotary, including

mail intended for Defendant Judge. (D.I. 3 at ¶ 14) Plaintiff's colleague, who also worked

directly for Defendant Judge, similarly had such authority. (*Id.*) After sharing the contents of the

document with her colleague, Plaintiff approached Defendant Judge and gave her the document.

(D.I. 6, ex. A at 1; D.I. 3 at ¶ 14) In doing so, Plaintiff indicated to Defendant Judge that she had

read the contents of the document, however, Plaintiff did not disclose that she had shared the

---

[1]     As is further discussed below, the contents of this "Factual Background" section
are drawn from Plaintiff's allegations in her Amended Complaint, as well as from certain
documents submitted by Defendants along with the instant Motion.

2

contents of the document with Plaintiff's colleague. (D.I. 6, ex. A at 1; D.I. 3 at ¶¶ 14-15)

Subsequently, Defendant Judge asked Plaintiff to keep the information in the document to

herself, and Plaintiff agreed to do so. (D.I. 6, ex. A at 1; D.I. 3 at ¶¶ 14-15)

After this "brief conversation," Plaintiff heard nothing more about the incident until

August 26, 2011. (D.I. 3 at ¶ 14) On that day, Defendant Judge came to Plaintiff's desk to

inform Plaintiff that the two of them were required to immediately meet with Defendant Autman

(Defendant Judge's supervisor) in a conference room. (*Id.* at ¶ 12) Upon arriving at the

conference room, Plaintiff found Defendant Judge, Defendant Autman, and Defendant Kling

waiting for her. (*Id.*)

Immediately upon sitting down, Plaintiff was shown (but was not given a copy of) a

document entitled, "Recommendation for Termination" ("Recommendation"). (*Id.* at ¶¶ 13-14)

Defendant Kling then informed Plaintiff that this Recommendation had been "signed off" on.

(*Id.* at ¶ 13) Defendant Judge proceeded to read aloud the contents of the Recommendation to

Plaintiff. (*Id.* at ¶ 15) The Recommendation recounted certain facts regarding the August 12,

2011 incident and further alleged that Plaintiff's sharing of the contents of the document was a

violation of the Code of Conduct for Judicial Branch Employees ("Code of Conduct"). (D.I. 6,

ex. A at 1; D.I. 3 at ¶ 14) The Recommendation also noted that:

> [Y]our employment is terminated effective August 26, 2011. You have
> the right to request a pre-termination hearing in writing and submitted to
> Priscilla Haugh no later than September 16, 2011 per the Judicial
> Personnel Rules. As of today, you will be suspended without pay pending
> the hearing.

(D.I. 6, ex. A at 2) After reading the Recommendation, Defendant Judge asked Plaintiff whether,

on the day of the incident, Plaintiff had shared the contents of the document in question with her

3

colleague before or after Plaintiff brought the document to Defendant Judge. (D.I. 3 at ¶ 15) Plaintiff replied that she had shown the document to her colleague before she brought it to Defendant Judge, and reiterated that, thereafter, she had not shared the contents of the document with anyone else. (*Id.*) Defendant Judge expressed that, had she known this, there may have been a "different outcome." (*Id.*)

Immediately following this exchange, Defendant Autman called Plaintiff a "dishonest person." (*Id.*) Plaintiff was not given an opportunity to respond to this comment because, without further explanation, Defendant Kling "abruptly" told Plaintiff that she could "appeal, resign or be terminated." (*Id.* at ¶ 16) However, Defendant Kling told Plaintiff that if she wished to resign she had to immediately write a resignation letter in the presence of her managers. (*Id.* at ¶ 23) Additionally, Plaintiff was not advised of any right to counsel. (*Id.* at ¶ 16)

Plaintiff responded that she would resign. (*Id.*) Plaintiff alleges that in doing so, she did not have enough time to gather all of her thoughts, and that her offer to resign was motivated by a desire to avoid the "stigma of termination." (*Id.*) Defendant Kling then passed Plaintiff a blank piece of paper on which Plaintiff was told to write out a resignation letter directed to the Prothonotary, Sharon Agnew. (*Id.*; D.I. 6, ex. C) On that paper, Plaintiff wrote: "I hereby resign [e]ffective immediately." (D.I. 6, ex. C) Plaintiff then surrendered her identification badge and left the workplace, ending the approximately fifteen-minute-long meeting. (D.I. 3 at ¶ 16)

Subsequently, due to certain benefits-related issues regarding the August 26, 2011 resignation, Plaintiff was requested to and did submit another resignation letter. (*Id.* at ¶ 20; D.I. 6, ex. E) This second resignation letter consisted of an e-mail from Plaintiff to Priscilla Haugh, dated Monday, August 29, 2011, which read: "I am submitting this e-mail to notify you that my

4

resignation will be effective on September 3rd, 2011." (D.I. 6, ex. E)

Approximately one week following the August 26, 2011 meeting, the Recommendation document was provided to Plaintiff for the first time. (D.I. 3 at ¶ 14) Subsequently, on September 16, 2011, Plaintiff retained counsel and, on the same day, submitted a request for a pre-termination hearing to Ms. Haugh. (*Id.* at ¶ 18)

On September 21, 2011, Defendant Frederick wrote to Plaintiff to advise her that the "September 16, 2011 request to rescind [her] resignation [was] not approved" because Defendant Frederick found that Plaintiff had effectively resigned on September 3, 2011 (pursuant to the terms of Plaintiff's August 29, 2011 e-mail). (*Id.* at ¶ 20 (internal quotation marks omitted)) In response, on October 3, 2011, Plaintiff's counsel sent a letter to Defendant Frederick again requesting a pre-termination hearing. (*Id.* at ¶ 21) On November 9, 2011, Defendants' counsel responded by letter, characterizing Plaintiff's separation from the Superior Court as a voluntary resignation, and again stating that, due to this voluntary resignation, Plaintiff had not been entitled to a pre-termination hearing. (*Id.* at ¶ 22; D.I. 6, ex. D at 2) Plaintiff's counsel subsequently responded by, *inter alia*, characterizing the separation as a "forced resignation." (D.I. 3 at ¶¶ 23-24) By letter dated December 5, 2011, Defendants again denied Plaintiff's request for a pre-termination hearing. (*Id.* at ¶ 25) To date, Plaintiff remains separated from the Superior Court, although she has continued to request a pre-termination hearing before a neutral decision maker. (*Id.* at ¶ 26)

C.     **Procedural Background**

On March 6, 2012, Plaintiff filed a Complaint in this Court against Defendants (D.I. 1) On March 19, 2012, Plaintiff filed an Amended Complaint, as a matter of right, to correct the

spelling of the name of one of the Individual Defendants in the case caption; the Amended

Complaint otherwise contained the same content as the original Complaint. (D.I. 3; D.I. 7 at 17

n.3)

On April 10, 2012, in lieu of answering, Defendants filed the Motion, pursuant to Federal

Rules of Civil Procedure 12(b)(1)[2] and 12(b)(6). (D.I. 5)  On May 3, 2012, Chief Judge Gregory

M. Sleet referred this case to the Court to "conduct all proceedings related to discovery disputes,

alternate dispute resolution, and dispositive and nondispositive motions up to the pretrial

conference." (D.I. 8)  Briefing on the Motion was completed on May 11, 2012. (D.I. 6; D.I. 7;

D.I. 10)

## II.   STANDARD OF REVIEW

The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil

Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2).  When presented with a Rule 12(b)(6) motion to

dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC

Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the court separates the factual and legal

elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but

---

[2]     With respect to the portions of the Motion that appear to be based upon Rule
12(b)(1), Defendants argue that the Eleventh Amendment of the U.S. Constitution bars the
claims against (1) the Superior Court and (2) the Individual Defendants in their official
capacities. (D.I. 6 at 7-8)  With respect to the Superior Court, Plaintiff has responded that she
will agree to voluntarily dismiss the Superior Court, however, to date, Plaintiff has not done so.
(D.I. 7 at 16)  In light of the parties' agreement on this issue, the Court recommends that
Defendants' Motion to Dismiss as to the Superior Court be granted as unopposed.  With respect
to the remaining defendants, Plaintiff states that it is suing the individual Defendants "in their
individual capacities *only*." (D.I. 7 at 16 (emphasis in original))  Thus, the Court recommends
that this grounds for dismissal be denied as moot.

6

[disregarding] any legal conclusions." *Id.* at 210–11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1950 (2009)). Thus, although a non-fraud claim need not be pled with particularity or specificity, that claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Fowler*, 578 F.3d at 211 (citations omitted). Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## III.  DISCUSSION

In bringing her Section 1983 claims, Plaintiff alleges that her procedural due process rights have been violated. In the Motion, Defendants allege that Plaintiff has failed to state a cause of action, pursuant to Rule 12(b)(6), by failing to allege facts sufficient to show that:  (1)

her separation was the product of duress or coercion; (2) any of the Defendants may be sued in their individual capacities (as opposed to their official capacities); and (3) Defendant Autman, in particular, can be liable for any of the alleged due process violations. (D.I. 6 at 2, 9) The Court will address each of these arguments in turn. However, the Court must first address a threshold issue, raised by Plaintiff, as to whether the Defendants' attachment of certain documents to the Motion requires that the Motion be treated as one for summary judgment. (D.I. 7 at 1)

### A.   Consideration of Materials Not Attached to the Complaint

Along with their opening brief, Defendants attached five separate documents (and referred to these documents in their briefing): (1) the Recommendation, (D.I. 6, ex. A); (2) the Code of Conduct, (*id.*, ex. B); (3) the August 26, 2011 resignation letter, (*id.*, ex. C); (4) the November 9, 2011 letter from Defendants' counsel, (*id.*, ex. D); and (5) the August 29, 2011 e-mailed "second resignation letter", (*id.*, ex. E). In her answering brief, Plaintiff argues simply that "Defendant[s'] Motion to Dismiss must now be treated as a Motion for Summary Judgment" because Defendants have referred to matters outside the pleadings.[3] (D.I. 7 at 1 (quoting Fed. R. Civ. P. 12(d))) In their reply brief, Defendants counter that the five referenced documents fall into "a limited exception to the rule regarding the consideration of matters outside the pleadings." (D.I. 10 at 4-6)

---

[3]      Because the Court ultimately determines that all five documents are appropriately considered on a motion to dismiss, the Court declines to treat Defendants' Motion as a motion for summary judgment. Therefore, the Court will not consider Plaintiff's affidavit attached to her answering brief, (D.I. 7, ex. A). *See Steinhardt Grp., Inc. v. Citicorp*, No. Civ. A. 96-15-SLR, 1996 WL 790097, at *2 n.1 (D. Del. Dec. 2, 1996) (considering documents attached to defendant's motion to dismiss on which plaintiffs' amended complaint was based, but declining to consider a document offered by plaintiffs in their response to the motion, as the document was generated five months after the amended complaint was filed).

Courts faced with a motion to dismiss must generally limit their consideration solely to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Pragmatus AV, LLC v. TangoMe, Inc.*, Civil Action No. 11-1092-LPS, 2013 WL 571798, at *2 n.2 (D. Del. Feb. 13, 2013). However, courts may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196; *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation marks, citations and emphases omitted). Such documents need not be explicitly cited in the plaintiff's complaint, so long as it is clear that the claims in the complaint are based on the document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

"The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (internal quotation marks omitted); *Pension Benefit Guar. Corp.*, 998 F.2d at 1196-97 ("When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished."). Second, the exception prevents a plaintiff with a legally deficient claim from surviving a motion to dismiss "simply by failing to attach a dispositive

9

document on which it relied." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.

Here, Plaintiff claims that she was denied due process of law in various ways. (D.I. 3 at ¶¶ 27-37) Each of the five attached documents was clearly referenced in the Amended Complaint, and in many instances, Plaintiff quoted from the documents in that pleading. (*Id.* at ¶¶ 13-18, 20, 22) As a result, the Court finds that Plaintiff was assuredly on notice of the documents, and that her due process claims can fairly be said to be "based on" those documents. *See Apau v. Printpack Inc.*, 722 F. Supp. 2d 489, 490-92 (D. Del. 2010) (finding it appropriate to consider a plaintiff's performance review and a warning letter that the defendant had attached to its motion to dismiss, as these documents were specifically referenced and relied upon by plaintiff in his complaint alleging various types of discrimination).

For example, Plaintiff claims that she was denied due process when she was forced to resign during the August 26, 2011 meeting. (*Id.* at ¶¶ 23, 30; D.I. 7 at 18-19) To support this claim, in her Amended Complaint, Plaintiff repeatedly referenced and relied upon the first three documents at issue—the Recommendation, the Code of Conduct, and her August 26, 2011 letter of resignation—as documents that played a key role in her allegedly forced resignation. (*Id.* at ¶¶ 13-17) Indeed, with respect to the Code of Conduct, Plaintiff quoted from that document in her Amended Complaint, noting that Defendants pointed to her purported violation of a portion of that Code as justification for their decision to terminate Plaintiff. (*Id.* at ¶ 14) Plaintiff also claims she was denied due process when her request for a pre-termination hearing was rejected. (*Id.* at ¶¶ 30, 34-37) In supporting this claim in the Amended Complaint, Plaintiff references and quotes from the fourth document, the November 9, 2011 letter from Defendants' counsel, citing this letter as one instance in which Defendants denied her request for a pre-termination hearing.

(*Id.* at ¶ 22) Plaintiff also references the fifth document, the August 29, 2011 e-mail, in her

Amended Complaint. (*Id.* at ¶ 20) In doing so, she noted that this e-mail/second resignation

letter (which requested that Plaintiff's effective resignation date be pushed back to September 3,

2011) served as the basis for Defendant Frederick's later denial of Plaintiff's request to rescind

her resignation, and to thus deny Plaintiff a pre-termination hearing. (*Id.*)

Therefore, for the above reasons, the Court can and will appropriately consider all five of

the attached documents in reviewing the instant Motion.[4]

### B.      Plaintiff Has Sufficiently Alleged a Procedural Due Process Violation

In order to allege a violation under 42 U.S.C. § 1983, Plaintiff must allege: "(1) a

violation of a right secured by the U.S. Constitution or federal law, and (2) action under color of

state law." *Barkauskie v. Indian River Sch. Dist.*, 951 F. Supp. 519, 540 (D. Del. 1996) (citing

*Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, procedural due process claims, to

be valid, must allege state sponsored-deprivation of a protected interest in life, liberty or

property, without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *Rusnak v.

Williams*, 44 F. App'x 555, 558 (3d Cir. 2002).

### 1.      Protected Property Interest

The first issue in the analysis is whether the employee has a constitutionally protected

property interest in her employment. *See Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d

Cir. 1999); *Stiner v. Univ. of Del.*, No. Civ. 02-312-SLR, 2004 WL 1949545, at *6 (D. Del. Aug.

27, 2004). "To have a property interest in a job . . . a person . . . must have a legitimate

---

[4]      In addition, because the authenticity of the five documents referenced does not
appear to be disputed here, (D.I. 7 at 1; D.I. 10 at 6), the Court will assume that they are authentic
for purposes of the analysis.

entitlement to such continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir.

2005). Such an entitlement exists when a public employee "cannot be removed except 'for

cause.'" *Richardson v. Felix*, 856 F.2d 505, 509 (3d Cir. 1988) (quoting *Logan v. Zimmerman*

*Brush Co.*, 455 U.S. 422, 430 (1982)); *see also Hargray v. City of Hallandale*, 57 F.3d 1560,

1567 (11th Cir. 1995) (per curiam) ("Hargray had a property interest in his continued

employment with the City because he was covered by the City's Civil Service rules which

protected him from arbitrary dismissal."); *Dixon v. Mayor and Council of City of Wilmington*,

514 F. Supp. 250, 253 (D. Del. 1981) ("This Court has consistently held that public employees

have a property interest if the employer has set out guidelines as to grounds for discharge.").

Here, for purposes of this Motion, the parties do not dispute that Plaintiff had such an interest in

her employment position. (D.I. 6, ex. D at 1 (Defendants' stating that Plaintiff's employment

"was governed by the Supreme Court of Delaware Judicial Branch Personnel Rules . . . [and

Plaintiff] would have been entitled to a pre-termination hearing pursuant to Personnel Rule 12.4

*if* she had not elected to resign in anticipation of termination.") (emphasis in original); D.I. 7 at

13) Thus, the Court will assume, for purposes of this Motion, that Plaintiff had such a property

interest.

### 2. Plaintiff Has Alleged Sufficient Facts to Permit a Plausible Inference that Her Resignation Was Coerced

Generally, if a protected property interest "has been or will be deprived, procedural due

process requires that the governmental unit provide the individual with notice and a reasonable

opportunity to be heard." *Rusnak*, 44 F. App'x at 558; *see also Cleveland Bd. of Educ. v.*

*Loudermill*, 470 U.S. 532, 542 (1985). However, when an employee voluntarily resigns from

employment, she is deemed to have forfeited her property interest in continued employment and

her corresponding rights to procedural due process. *Leheny*, 183 F.3d at 227-28; *Stiner*, 2004

WL 1949545, at *6. Employee resignations are presumed to be voluntary and will remain so

"until the employee presents evidence to establish that the resignation . . . was involuntarily

procured." *Leheny*, 183 F.3d at 227. One such circumstance in which a resignation may be

considered to be involuntarily procured—the only one Plaintiff cites as being applicable here—is

when the employer "forces the resignation . . . by coercion or duress." *Id.* at 228 (citing *Hargray*,

57 F.3d at 1568).

To determine whether a resignation was coerced or obtained under duress, a court must

examine "the surrounding circumstances to test the ability of an employee to exercise free

choice." *Id.* at 227 (internal quotation marks and citation omitted). In making this

determination, courts have looked to the following factors for guidance:

> (1) whether the employee was presented with an alternative to resignation;
> (2) whether the employee understood the nature of the choice [s]he was
> given; (3) whether the employee had a reasonable time to choose; (4)
> whether the employee was permitted to select the effective date of
> resignation; and (5) whether the employee had the advice of counsel.

*O'Connell v. Cnty. of Northhampton*, 79 F. Supp. 2d 529, 533 (E.D. Pa. 1999) (citing *Hargray*,

57 F.3d at 1568); *see also Rusnak*, 44 F. App'x at 558-59 (addressing some of these factors in its

analysis); *Speziale v. Bethlehem Area Sch. Dist.*, 266 F. Supp. 2d 366, 372-73 (E.D. Pa. 2003).

This analysis is to be employed from an objective perspective. *Angarita v. St. Louis Cnty.*, 981

F.2d 1537, 1544-45 (8th Cir. 1992) ("The above factors are to be measured by an objective

standard, as opposed to an employee's subjective evaluation of a situation."); *Hargray*, 57 F.3d

at 1568. Thus, the issue is whether, under the circumstances, an objectively reasonable employee

would have felt coerced to resign. *See Leheny*, 183 F.3d at 228 (finding that "a reasonable police officer" in the plaintiffs' shoes would not have felt coerced into resignation under the circumstances).

It is important to note that when considering these factors, the mere fact that an employee is faced with a choice between resignation, on the one hand, and possible termination, on the other hand, is not enough to show that the separation was involuntary. *Leheny*, 183 F.3d at 227 ("If an employee retires of his own free will, *even though prompted to do so by some action of his employer*, he is deemed to have relinquished his property interest in his continued employment for the government[.]") (emphasis added) (citing *Hargray*, 57 F.3d at 1567); *Hargray*, 57 F.3d at 1568 ("resignations can be voluntary even where the only alternative to resignation is facing possible termination for cause or criminal charges"); *see also O'Connell*, 79 F. Supp. 2d at 534 (finding plaintiff's resignation was voluntary "under the totality of the circumstances . . . even if prompted by some action of the . . . defendants"). Yet if the resignation at issue is "so involuntary that it amounted to a constructive discharge" it can be considered a deprivation of one's property rights. *Hargray*, 57 F.3d at 1567; *see also Cacy v. City of Chickasha*, No. 96-6211, 1997 U.S. App. LEXIS 23039, at *26 (10th Cir. Sept. 2, 1997) (finding that public employees can make out a case of coercion or duress when they present "egregious evidence of coercion or duress [sufficient] to show that [they were] involuntarily discharged"). Such a circumstance may occur when an employee must choose "between resigning or facing proceedings for dismissal" without "sufficient time and opportunity for deliberation of the choice posed." *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982) (citing cases).

14

For instance, in *Paroczay v. Hodges*, 297 F.2d 439 (D.C. Cir. 1961), the United States Court of Appeals for the District of Columbia overturned the district court's grant of summary judgment for defendant that a resignation was voluntary, finding that the plaintiff's affidavit as to the account of the events leading to his separation created a genuine issue of material fact as to the voluntariness of his resignation. *Id.* at 440-41. The affidavit stated that a day before plaintiff's resignation, he had an interview with a personnel officer of the Department of Commerce, in which the officer told the plaintiff that "he had derogatory information [regarding plaintiff] and that he should resign." *Id.* at 440. On the following day, in another interview with the officer, the plaintiff alleged that he denied the allegations leveled against him the previous day but that the officer said: "[i]f you do not resign now, I will press charges immediately. As soon as I go into the front office, I will start proceedings." *Id.* When the plaintiff asked for time to think the matter over, the officer allegedly said, "[n]o, once you leave this office, I will start proceedings right now. Sign [the resignation] now." *Id.* at 441. The plaintiff alleged that he did in fact sign, "without [the] advice of counsel or an opportunity to discuss the matter with [his] wife or friends, and being apprehensive of being held up to public obloquy." *Id.* The *Paroczay* Court found that although the officer had raised the alternative of resigning or facing charges on the day before plaintiff's resignation, the additional allegation that the officer, for the first time, pressed the plaintiff into an *immediate* decision on the next day without opportunity for deliberation raised an issue of material fact as to the voluntariness of the resignation. *Id.*

In this case, assuming the factual allegations in the Amended Complaint to be true and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has adequately pled that, under the totality of the circumstances, her resignation from the Superior

Court was involuntary.

As for the first factor, the facts pled indicate that Plaintiff did technically have an alternative to resignation. Although Plaintiff was informed during the August 26, 2011 meeting that supervisory officials at the Superior Court had "signed off" on the "termination recommendation," that did not mean that Plaintiff was at that point terminated. (D.I. 3 at ¶¶ 13-14) The Recommendation appears alleged to have been just that—a recommendation—and not an actual letter detailing Plaintiff's termination. Moreover, that Recommendation, which was read to Plaintiff, stated that Plaintiff had "the right to request a pre-termination hearing" and that until that hearing she would "be suspended without pay." (*Id.* at ¶ 17; D.I.6, ex. A at 2) Plaintiff further alleges that, during the meeting, Defendant Kling told her that she could "appeal, resign, or be terminated." (D.I. 3 at ¶ 16) Taken together, even interpreting these facts in the light most favorable to Plaintiff, their reasonable import is that Plaintiff was technically given a choice among the options put forward by Defendant Kling. *See Rivera v. Dep't of Health*, No. 4:11-cv-509-RS-CAS, 2012 WL 2326073, at *4 (N.D. Fla. June 19, 2012) (finding, in resolving motion for summary judgment regarding voluntariness of plaintiff's resignation, that plaintiff had alternatives, and "was given a choice" between resignation or termination for cause).

With respect to the second factor, Plaintiff has alleged facts that could plausibly suggest that she did not understand the full nature of the choice before her. On the one hand, it is undisputed that Plaintiff understood and apparently contemplated at least a portion of the ramifications of termination—those related to the "stigma of termination." (D.I. 3 at ¶ 16); *see Rivera*, 2012 WL 2326073, at *4 ("[Plaintiff] understood the difference of having 'resigned' versus being 'terminated' when looking for subsequent employment."). On the other hand,

16

however, certain facts pled can give rise to the plausible inference that Plaintiff did not fully understand the nature of this choice.

For one thing, Plaintiff alleged facts suggesting that, prior to the August 26, 2011 meeting itself, she did not have any advance notice that she might be faced with this decision—and thus, she could not have preemptively weighed the pros and cons of resignation versus requesting a pre-termination hearing. To that end, Plaintiff alleged that (1) she "was shocked" by the August 26, 2011 meeting; (2) prior to the meeting, she had no reason to believe that she was being considered for termination; and (3) she had "heard nothing" about the August 12, 2011 incident with Defendant Judge between the date of the incident and the August 26, 2011 meeting itself. (D.I. 3 at ¶¶ 13-14)[5]

Moreover, it is a plausible inference that Plaintiff did not have time to contemplate or did not fully understand the salary and benefits-related ramifications resulting from an immediate resignation. Specifically, after tendering her immediate resignation on August 26, 2011, Plaintiff was thereafter advised to and did submit the second resignation letter, setting her effective resignation date as September 3, 2011—in order to better enable her to take advantage of additional medical and employment benefits. (D.I. 3 at ¶ 20; D.I. 6, ex. C) These facts could plausibly suggest that as of the August 26, 2011 meeting, Plaintiff did not have a good sense as to how her employment benefits would be affected by her immediate resignation. *Cf. Rivera,*

---

[5]     *Cf. Hargray*, 57 F.3d at 1569 (overturning district court's finding that plaintiff had no advance notice that charges may be brought against him prior to resignation, where the record showed that plaintiff had been aware that (1) other city employees were called to the police station for questioning regarding the issue leading to plaintiff's resignation, (2) serious allegations had been leveled against him personally, and (3) a co-worker, who was implicated in the charges, had previously been called down to the police station for questioning on the same topic and had resigned).

2012 WL 2326073, at *4 (finding resolution voluntary where plaintiff knew that if "she was

terminated, she would not have been able to use her accrued leave or stay on the Department's

health insurance plan"); *Speziale*, 266 F. Supp. 2d at 373-74 (finding resignation voluntary

where, *inter alia*, plaintiff understood the nature of the choice before him, when the record

showed that he had kept abreast of his retirement options throughout his employment and thus

was aware of the financial consequences of choosing when to retire).

As to the third factor, Plaintiff has alleged facts plausibly suggesting that she did not have

a reasonable amount of time in which to make her decision. As already noted, Plaintiff has

alleged that she had no knowledge that her employment was in jeopardy prior to the August 26,

2011 meeting, such that she would not have had time in advance to consider what she would do

if confronted with a "take-it-or-leave-it" resignation proposition at the meeting. *Compare*

*Paroczay*, 297 F.2d at 441 (finding a triable issue of material fact as to whether a "take-it-or-

leave-it" decision was involuntary, even though the plaintiff had been informed of the charges

against him the previous day, when it had been suggested that he resign), *with Hargray*, 57 F.3d

at 1569 (finding that plaintiff was given an opportunity to consider alternatives where he had a

few weeks advance notice that he may be called to the police station and that he may be asked to

resign or face criminal charges). Moreover, Plaintiff has alleged that she had only minutes to

make the decision as to whether to retire at the August 26, 2011 meeting. She has pled facts in

support of this allegation, including that: (1) the meeting lasted no more than approximately

fifteen minutes, in which time she was given only one opportunity to speak; (2) near the

meeting's end, she was "abruptly" offered the opportunity to resign, but only if "she immediately

wrote a resignation letter in the presence of her managers"; (3) without "being able to gather her

18

thoughts" she agreed to resign; and (4) she wrote a one-line resignation letter on a piece of paper supplied to her, then turned in her identification badge and left.[6] (D.I. 3 at ¶¶ 16, 23; D.I. 6, ex. C) These allegations, if true, permit the plausible inference that Plaintiff was not provided a reasonable amount of time in which to make a decision to resign.[7]

As to the fourth factor, although the facts pled regarding this issue are somewhat scant, Plaintiff has alleged facts suggesting that she did not have control over the effective date of her resignation. Plaintiff alleges she was offered the opportunity to resign if she immediately wrote a resignation letter in the presence of her managers. (D.I. 3 at ¶ 23) After agreeing to resign, Plaintiff alleges that she was "passed . . . a blank piece of paper . . . [and] told to direct her resignation to Sharon Agnew, Prothonotary." (*Id.* at ¶ 16) On that paper, Plaintiff wrote: "I

---

[6]      There are some facts in at least one of the documents submitted by Defendant suggesting that Plaintiff was in fact offered time to consider this decision. (D.I. 6, ex. D at 1 ("Ms. Caruso submitted her resignation in writing on August 26, 2011, despite being cautioned against such immediate action.")) At this stage of the proceedings however, where the facts pled in Plaintiff's Amended Complaint must otherwise be construed in the light most favorable to her, the Court does not find that this fact issue necessarily renders Plaintiff's claim on this point implausible. *See Fowler*, 578 F.3d at 210.

[7]      *Compare Paroczay*, 297 F.2d at 441 (finding sufficient evidence to uphold a jury verdict that a resignation was involuntary where, *inter alia*, plaintiff was told that he would be fired if he left a meeting with his supervisor without resigning, despite plaintiff's request for a few days to consider the matter), *and Angarita*, 981 F.2d at 1545 (finding resignation involuntary where, *inter alia*, appellees were not permitted to leave meeting room with supervisor without signing resignation form), *with Stone v. Univ. Md. Med. Sys. Corp.*, 855 F.2d 167, 170-71, 177 (4th Cir. 1988) (upholding district court's decision as to voluntariness of plaintiff's retirement, including a finding that plaintiff had a reasonable period of time to decide whether to resign, where the plaintiff was given a few hours over a day to make the decision and had opportunities to leave meeting rooms to get advice from third-parties on the decision), *and Turinski v. Wilkes-Barre Fire Fighters Ass'n Local 104*, Civil Action No. 3:04-CV-1919, 2006 WL 3742714, at *6 (M.D. Pa. Dec. 18, 2006) (finding, in resolving summary judgment motion, resignation to be voluntary where, *inter alia*, the plaintiff had more than three months to consider his decision to retire).

hereby resign [e]ffective immediately" and thereafter turned in her badge and left the premises. (D.I. 6, ex. C; D.I. 3 at ¶ 16) Taken together, these facts permit a plausible inference that Plaintiff was forced to resign effective August 26, 2011. *Cf. Stone v. Univ. Md. Med. Sys. Corp.*, 855 F.2d 167, 177 (4th Cir. 1988) (finding resignation voluntary where the plaintiff "dictated the terms of his resignation himself, and he drove a hard bargain, demanding that he be given a clean record, a delayed effective date, and a full year's salary"); *Turinski v. Wilkes-Barre Fire Fights Ass'n Local 104*, Civil Action No. 3:04-CV-1919, 2006 WL 3742714, at *7 (M.D. Pa. Dec. 18, 2006) (finding plaintiff had control over effective date of retirement where there was "no evidence in the record suggesting that Plaintiff was given a deadline to make his decision").[8]

With regard to the fifth factor, Plaintiff has put forward facts that support a plausible claim that the resignation was involuntary. During the August 26, 2011 meeting, when Plaintiff agreed to resign, Plaintiff alleges that she was not represented by counsel and was also not advised of her right to counsel. (D.I. 3 at ¶¶ 12, 16) However, when Plaintiff did retain counsel on September 16, 2011 she, on the same day, made her first request for a pre-termination hearing. (*Id.* at ¶ 18) These allegations, thus, render it at least plausible that Plaintiff, if represented by

---

[8] Moreover, the fact that Plaintiff submitted a second resignation letter via e-mail, changing the effective date of her resignation to September 3, 2011, still allows for the plausible inference that she did not have control over her effective resignation date. Plaintiff clearly alleges that she did not "choose" her first effective resignation date—that she was required to and did resign on August 26, 2011. As to the process that gave rise to the change of the effective resignation date to September 3, 2011, there are few facts before the Court, and those facts provide little to no indication that *Plaintiff* negotiated for, argued for or otherwise controlled the selection of this new date (in order to take advantage of additional benefits or for any other reason). (D.I. 3 at ¶ 20 (alleging that Plaintiff was "requested" to and did submit the second resignation letter and was "advised" to do so)); *cf. Speziale*, 266 F. Supp. 2d at 374 (finding plaintiff had control over the effective date of his resignation where he "negotiated for a retirement date that allowed him not to return to work and to maximize his retirement benefits" which "demonstrate[d] plaintiff's control over when to resign").

counsel at the meeting, would have declined the opportunity to resign and instead requested a

pre-termination hearing. *Cf. Turinski*, 2006 WL 3742714, at *7 (finding the lack of counsel

unpersuasive where the plaintiff failed to present any evidence as to how the advice of counsel

would have altered his decision to retire); *Speziale*, 266 F. Supp. 2d at 374 (same).

After weighing the five factors above, the Court concludes that Plaintiff's allegations, if

true, raise at least a plausible claim that Plaintiff's resignation was coerced, and thus could rebut

the presumption that this was a voluntary resignation.[9] Although, Plaintiff was given the option

of resignation or termination/requesting a pre-termination hearing, other allegations—including

those relating to the allegedly unexpected nature of the decision, the short amount of time

Plaintiff had to make the decision, the lack of control over her effective resignation date and the

lack of assistance of an attorney—counsel in favor of this conclusion. *Compare Paroczay*, 297

F.2d at 441, *and Patton v. Pasqualini*, Civil Action No. 09-4893, 2011 WL 3803505, at *10-11

(E.D. Pa. Aug. 25, 2011) (denying summary judgment by finding that a jury could conclude that

the plaintiff was constructively discharged, and thus deprived of his position without due process

of law, where his supervisor "threatened him with termination and criminal charges if he did not

retire without giving [the plaintiff] prior notice of the allegations against him or a chance to

respond to them"), *with Hargray*, 57 F.3d at 1569 (finding resignation voluntary where the

plaintiff had advance notice of potential criminal charges, had an opportunity to consider

alternatives and was subsequently forced to make an unpleasant decision in a short period of

---

[9]      Such a finding would:  (1) trigger the protections of the Due Process Clause and
(2) form the basis of a Section 1983 due process claim. *Hill v. Borough of Kutztown*, 455 F.3d
225, 233 n.10 (3d Cir. 2006); *Patton v. Pasqualini*, Civil Action No. 09-4893, 2011 WL
3803505, at *10 (E.D. Pa. Aug. 25, 2011); *Turinski*, 2006 WL 3742714, at *5.

time, while he felt intimidated, without the advice of an attorney).

### 3.    The Individual Defendants Were "Acting Under Color Of Law"

Defendants also move to dismiss the Amended Complaint as to all Defendants sued in

their individual capacities.  In doing so, they argue that nothing Plaintiff has alleged in the

Complaint indicates "the [D]efendants were acting outside the scope of their employment and in

any other capacity other than their official capacities." (D.I. 6 at 10; *see also* D.I. 10 at 9)

At its core, this issue relates to what it means for a person to be "acting under the color of

state law" in the context of Section 1983.  It appears as if Defendants are arguing that a defendant

may only be sued in their "individual capacity" pursuant to Section 1983 when they have taken

actions that are not within the scope of their employment duties and authority as a state officer.[10]

(D.I. 6 at 10)  However, this exact argument was rejected by the United States Supreme Court in

*Hafer v. Melo*, 502 U.S. 21 (1991).  There, the defendant, a state official being sued for firing her

subordinates (the plaintiffs), argued that "state officials may not be held liable in their personal

capacity for actions they take in their official capacity." *Id.* at 27.  The Supreme Court rejected

this argument, finding that "[t]he requirement of action under color of state law means that [the

defendant] may be liable for discharging [the plaintiffs] precisely because of her authority as [a

state official]." *Id.* at 27-28.  The Supreme Court also rejected the more circumscribed argument

that a state official should *only* be immune from personal liability under Section 1983 for actions

that are "within the official's authority and necessary to the performance of governmental

---

[10]    However, to the extent that Defendants argue that a state official sued in their *individual capacity* for damages is not a "person" under Section 1983, the Court is unpersuaded. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of § 1983.").

22

functions," finding that "state officers [are not] absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." *Id.* at 28-29, 31; *see also Neuberger v. Gordon*, 567 F. Supp. 2d. 622, 639 (D. Del. 2008) ("[P]ersonal liability under § 1983 for acts taken under color of state law may be imposed on acts both within as well as outside an official's authority.").

Instead, "[t]o state a claim under § 1983, a plaintiff must . . . show that the alleged deprivation [of a Constitutional right] was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Machon v. Pa. Dept. of Public Welfare*, 847 F. Supp. 2d 734, 745 (E.D. Pa. 2012). In general, a person "acts under color of state law" where the person exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49 (internal quotation marks and citations omitted). In this regard, "[s]tate employment is generally sufficient to render the defendant a state actor." *Id.* (internal quotation marks and citation omitted); *see also Barkauskie*, 951 F. Supp. at 540. "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 49-50 (internal citations omitted).

Under this standard, it appears undisputed that Plaintiff has sufficiently alleged that the Individual Defendants were "acting under color of state law" when they allegedly deprived Plaintiff of her rights to procedural due process. For instance, when Defendants Judge, Autman, and Kling attended the August 26, 2011 meeting, they are alleged to have done so in their role as

23

managers at the Superior Court and as Plaintiff's superiors. (D.I. 3 at ¶¶ 11-16) Similarly, Defendant Frederick is alleged to have been acting in her capacity as Court Administrator when she wrote to Plaintiff on September 21, 2011 to advise that Plaintiff's request to rescind her resignation and obtain a pre-termination hearing was not approved. (*Id.* at ¶ 20) For their part, Defendants do not argue to the contrary.[11] Thus, the Court finds that Plaintiff has sufficiently alleged that the Individual Defendants were "acting under color of state law." *See Hafer*, 502 U.S. at 23-24, 27-29 (affirming finding that the defendant was acting under color of state law where the power to hire and fire complained of was derived from defendant's position as a state official).

C.     **Sufficiency of Evidence As To Defendant Autman**

Defendants also move to dismiss the claims against Defendant Autman, in particular. In doing so, they argue that the facts alleged fail to permit a plausible inference that Defendant Autman was personally involved or could otherwise be liable for Plaintiff's claims. (D.I. 6 at 8-9)

In order for an individual government defendant in a civil rights action to be liable, that defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Machon*, 847 F. Supp. 2d at 745. Among other things, "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207; *see also Machon*, 847 F. Supp. 2d at 745; *Hopkins v. Pusey*, 475 F.

---

[11]     Instead, as noted above, Defendants argue that Plaintiff has failed to "sufficiently allege[] conduct that would take the [D]efendants' actions outside of their official capacities." (D.I. 10 at 9)

Supp. 2d 479, 483 (D. Del. 2007). However, to show personal involvement through personal

direction or actual knowledge and acquiescence, the complaint must particularly "state[] the

conduct, time, place, and persons responsible" for the alleged violation. *Evancho v. Fisher*, 423

F.3d 347, 353 (3d Cir. 2005). Thus, in the context of constructive discharge, a supervisor who

was not physically present during the interrogations and coerced resignations, was held to have

sufficient personal involvement where "evidence was produced for the jury to find that [the

supervisor] had *known* every step his officers were taking and had either *tacitly or actually*

*approved every act.*" *Angarita*, 981 F.2d at 1545-46 (emphasis added).

Under this standard, Plaintiff has alleged sufficient facts to permit a plausible inference

that Defendant Autman had personal involvement in Plaintiff's claimed denial of procedural due

process. As described above, Plaintiff alleges that Defendant Autman was present and

participated in the August 26, 2011 meeting in which Plaintiff was allegedly coerced into

submitting a resignation—a resignation that is alleged to have deprived her of the right to a pre-

termination hearing. (D.I. 3 at ¶¶ 12, 23; *id.* at ¶ 15 (asserting that after the Recommendation

was read to Plaintiff during the August 26, 2011 meeting, Defendant Autman further participated

in the meeting by asserting that Plaintiff was a "dishonest person")). At this meeting, Defendant

Judge, whom Defendant Autman supervised, is alleged to have played an active role in

facilitating Plaintiff's resignation. (*Id.* at ¶ 15) These factual allegations, if true, make out a

plausible claim that Defendant Autman had direct personal involvement in, or, at the very least,

actual knowledge and acquiescence in, the acts leading to Plaintiff's allegedly forced resignation.

*See Angarita*, 981 F.2d at 1545-46 (finding sufficient evidence of defendant supervisor's

involvement in Section 1983 violation, where the evidence supported a finding that the defendant

"at least, approved of and condoned the activity, and, in all likelihood, facilitated the activity");

*Shingara v. Waugh*, Civil Action No. 1:07-CV-1252, 2010 WL 1462473, at *6 n.9 (M.D. Pa.

Apr. 9, 2010) (indicating, in reviewing summary judgment motion, that defendants' presence at

and involvement in a meeting alleged to have been called for retaliatory purposes would be

sufficient to demonstrate personal involvement in the purported injury); *cf. Evancho*, 423 F.3d at

353 (finding failure to allege personal involvement, in reviewing decision on motion to dismiss,

where plaintiff did not, *inter alia*, allege any facts indicating that the defendant had

"contemporaneous, personal knowledge of [plaintiff's] transfer and acquiesced in it"). For these

reasons, the Court finds that Plaintiff has sufficiently plead that Defendant Autman was

personally involved in Plaintiff's alleged denial of due process.

## IV.  CONCLUSION

For the foregoing reasons, I recommend that Defendants' Motion to Dismiss (D.I. 5):

(1) as to the Superior Court, pursuant to Rule 12(b)(1), be GRANTED;

(2) as to the Individual Defendants, pursuant to Rule 12(b)(1), be DENIED as moot; and

(3) as to the Individual Defendants, pursuant to Rule 12(b)(6), be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1) and D. Del. LR 72.1. The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss

of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-

79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order in Non-Pro Se Matters For

Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is

available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: April 12, 2013

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE